STATE OF NORTH CAROLINA v. MARK SUMMITT

No. 41

(Filed 6 January 1981)

**1. Criminal Law § 115— instructions on lesser included offense**

The trial judge must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury can find that a defendant committed the lesser included offense; conversely, when all the evidence tends to show that defendant committed the crime charged in the bill of indictment and there is no evidence of the lesser included offense, the court should refuse to charge on the lesser included offense.

**2. Rape § 5— first degree rape case — submission of second degree rape**

Evidence would be sufficient to carry a case to the jury on a charge of second degree rape of a twelve-year-old child pursuant to former G.S. 14-21 when the evidence fails to support any one of the elements of first degree rape enumerated in G.S. 14-21(1)(a), to wit, (1) the prosecuting witness is less than twelve years of age, (2) the defendant is more than sixteen years of age, (3) the virtuous character of the prosecuting witness.

**3. Criminal Law § 106— sufficiency of evidence to overrule nonsuit**

The standard to determine whether a charge should be submitted to the jury is the "more than a scintilla of evidence" test.

**4. Rape § 6.1— first degree rape case — submission of second degree rape —insufficient evidence — harmless error**

In a prosecution for first degree rape of an eleven-year-old girl, medical testimony which indicated that the victim had engaged in sexual intercourse prior to an examination a year after the incident in question and testimony by the prosecutrix that the rape did not cause any bleeding was insufficient to permit the jury to find that the victim was not virtuous at the time of the alleged rape so as to support the court's submission of the lesser offense of second degree rape. However, the court's erroneous submission of second degree rape was not prejudicial to defendant since the jury's verdict finding defendant guilty of second degree rape implicitly rejected defendant's sole defense that he did not commit the act upon which the charge was based, all the other evidence pointed to a crime of first degree rape, and the submission of the lesser included offense was thus favorable to defendant.

**5. Rape § 5— first degree rape — eleven year old victim — sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for first degree rape where the prosecuting witness testified that defendant had intercourse with her on or about the Friday before Easter in 1978, that she was born on 18 November 1966 and therefore was under the age of twelve at that time, and that she had never had sexual intercourse with anyone prior to the incident in question, and where the fact that defendant was over sixteen years of age was not contested.

**6. Indictment and Warrant § 17.2; Rape § 6— instructions — failure to limit jury to date in indictment — no denial of fair trial**

In a prosecution for rape upon an indictment which alleged that the crime occurred on 24 March 1978, defendant was not denied a fair trial because of the court's failure to limit the jury's consideration to the specific date charged in the indictment where a contextual reading of the record makes it clear that the jury's consideration of the crime was restricted to defendant's actions on or about 24 March 1978, the record reveals nothing indicating that defendant was surprised or hampered by any attempt of the State to alter the date charged in the bill of indictment, and defendant squarely met the State's evidence concerning his actions on or about 24 March 1979.

Justice BROCK did not participate in the consideration or decision of this case.

Justice EXUM dissenting.

Justice COPELAND joins in the dissenting opinion.

ON petition for discretionary review of decision of the Court of Appeals, 45 N.C. App. 481, 263 S.E. 2d 612, finding no error in the

trial before *Burroughs, J.*, at the 21 May 1979 Session of GASTON Superior Court.

Defendant was charged in bill of indictment number 79CRS 5134 with the first-degree rape of his eleven-year-old niece, Sherry Lynn Knight, He was also charged with the second-degree rape of the same person in bill of indictment number 79CRS5133. The charges were consolidated for trial, and defendant entered a plea of not guilty to each charge. The indictment for second-degree rape in indictment number 79CRS5133 is not before us on this appeal since the jury returned a verdict of not guilty on that charge.

The prosecuting witness testified that on or about 24 March 1978, defendant came to her home and carried her to his home. Defendant told her at that time that he and his wife were going to take her to buy an Easter dress. Upon arriving at defendant's home, she discovered that his wife was not at home, and shortly thereafter defendant proceeded to have intercourse with her. Sherry testified that she had never had intercourse before that date and that she did not tell her mother about this incident until sometime in March, 1979. After she told her mother of this assault, her mother called the police, and Sherry related substantially the same facts to the police. The witness's mother and police officers corroborated the prosecuting witness's testimony by relating statements that she made to them on that day.

A medical examination performed in March, 1979, indicated that the prosecuting witness had engaged in intercourse at some prior time.

Defendant testified that he had never transported the prosecuting witness anywhere unless someone else was in the car and that his wife was with him when they picked Sherry up on the date in question. Defendant offered corroborative testimony and also offered evidence of his good character.

In rebuttal, the State offered a witness who testified concerning a conversation with the prosecuting witness in which she told the witness of an attack upon her by defendant.

On the charge of first-degree rape on or about 24 March 1978, the trial judge submitted the possible verdicts of guilty or not guilty of first-degree rape, guilty or not guilty of second-degree rape, guilty or not guilty of assault with intent to commit rape and guilty

or not guilty of assault on a female. Before the trial judge instructed the jury, defendant objected to the submission of the lesser-included offenses. His objection was overruled. The jury returned a verdict of guilty of second-degree rape, and the trial judge entered judgment imposing a prison sentense of not less than ten nor more than fifteen years. Defendant appealed. The Court of Appeals in a unanimous opinion found no error, and defendant gave notice of appeal. In the alternative, defendant petitioned this Court for discretionary review pursuant to G.S. 7A-31. The Attorney General moved to dismiss defendant's appeal on 24 April 1980. We allowed defendant's petition for discretionary review on 3 June 1980 and denied the Attorney General's motion to dismiss on the same date.

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, Alan S. Hirsch, Assistant Attorney General, and John F. Maddrey, Associate Attorney, for the State.*

*Frank Patton Cooke, by Kenneth B. Oettinger, for defendant appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the action of the trial judge in submitting to the jury, over his objection, the lesser-included offense of second-degree rape. Defendant argues that it was error to submit the lesser-included offense of second-degree rape because there was no evidence from which the jury could find that he committed that offense. Defendant was charged under the provisions of former G.S. 14-21, repealed effective 1 January 1980 which provided:

Every person who ravishes and carnally knows any female of the age of 12 years or more by force and against her will, or who unlawfully and carnally abuses any female child under the age of 12 years, shall be guilty of rape, and upon conviction, shall be punished as follows:

(1) First-Degree Rape -
a. If the person guilty of rape is more than 16 years of age, and the rape victim is a virtuous child under the age of 12 years, the punishment shall be death; or

b. If the person guilty of rape is more than 16 years of age, and the rape victim had her re-

sistance overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her, the punishment shall be death.

(2) Second-Degree Rape - Any other offense of rape defined in this section shall be a lesser-included offense of rape in the first degree and shall be punished by imprisonment in the State's prison for life, or for a term of years, in the discretion of the court.

The trial judge gave the following instructions to the jury on second-degree rape:

If you do not find the defendant guilty of first-degree rape, you must decide whether he is guilty of second-degree rape. Second-degree rape differs from first-degree rape in that it is not necessary for the State to prove that the defendant was more than sixteen years of age or that Sherry Lynn Knight was virtuous.

So, I charge that if you find from the evidence beyond a reasonable doubt that on or about March 24, 1978, Mark Summitt had sexual intercourse with Sherry Lynn Knight who at that time had not reached her twelfth birthday, it would be your duty to return a verdict of guilty of second-degree rape. However, if you do not so find or have a reasonable doubt as to one or both of these things, you will not return a verdict of guilty of second-degree rape.

* * *

Now, Members of the Jury, I want to instruct you as to second-degree rape because in my earlier charge to you I left out a portion of it.

If you do not find the defendant guilty of first-degree rape, you must decide whether he is guilty of second-degree rape. Second-degree rape differs from first-degree rape in that it is not necessary for the State to prove the defendant was more than sixteen years of age or that Sherry Lynn Knight was virtuous.

So, I charge that if you find from the evidence beyond a reasonable doubt that on or about March 24, 1978, Mark

Summitt had sexual intercourse with Sherry Lynn Knight who at that time had not reached her twelfth birthday, it would be your duty to return a verdict of guilty of second-degree rape.

[1] The trial judge must submit and instruct the jury on a lesser-included offense when, and only when, there is evidence from which the jury can find that a defendant committed the lesser-included offense. Conversely, when all the evidence tends to show that defendant committed the crime charged in the bill of indictment and there is no evidence of the lesser-included offense, the court should refuse to charge on the lesser-included offense. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). The presence of evidence to support conviction of the lesser-included offense is the determinative fact. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976).

[2] Evidence would be sufficient to carry a case to the jury on a charge of second-degree rape of a twelve-year-old child pursuant to G.S. 14-21 when the evidence fails to support any one of the elements of first-degree rape enumerated in G.S. 14-21(1)(a), to wit, (1) the age of the prosecuting witness is less than twelve years old, (2) the age of defendant is more than sixteen years old, (3) the virtuous character of the prosecuting witness. Neither defendant nor the State contends that the age of the prosecuting witness or the age of defendant is in doubt. The State contends however that evidence exists in the record to support the submission and an instruction on the lesser offense since there was sufficient evidence to permit the jury to find that the prosecuting witness was not virtuous.

The State emphasizes two aspects of the evidence to support the instruction on the lesser offense. First, the State points to the medical evidence which indicated that the victim had previously engaged in sexual intercourse. Second, the State notes that during the prosecuting witness's testimony she twice stated that the rape did not cause any bleeding. The State contends that this evidence is sufficient to support a reasonable inference that the prosecuting witness was not virtuous.

[3] The standard to determine whether a charge should be submitted to a jury is the "more than a scintilla of evidence" test. The classic statement of the test comes from Stacy, C.J., in *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731 (1930), where he states:

It is sometimes difficult to distinguish between evidence

sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue. [Citations omitted.] The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

[4] The medical evidence relied upon by the State cannot be considered in support of its position. The examination of the prosecuting witness took place about a year after the incident and, while relevant to the issue of prior sexual activity as some evidence of defendant's guilt, the evidence is irrelevant as to the question of the victim's condition at the time of the alleged rape. Nothing in the doctor's testimony gives the jury a time frame from which it could reasonably conclude that the prosecuting witness was not virtuous on or before March, 1978.

The prosecuting witness's testimony that she did not bleed when she had her encounter with defendant does have some tendency to support the inference that she was not virtuous at the time of the incident. However, without more we cannot say that this meets the standard which would permit the case to go to the jury. It is common knowledge that a female person's hymen may be ruptured by many means other than sexual intercourse. Thus, in our opinion, the evidence relied upon by the State to support an inference that the prosecuting witness was not virtuous does not rise above a scintilla. The evidence may raise "a suspicion or conjecture," but it does not support "a fairly logical and legitimate deduction." Therefore, it was error for the trial judge to submit to the jury and instruct on the lesser-included offense of second-degree rape.

We turn to the question of whether the erroneous submission of the lesser-included offenses was so prejudicial to defendant as to warrant a new trial.

For many years, it has been the rule in this jurisdiction that the erroneous submission of a lesser-included offense not supported by the evidence is error, but not prejudicial error. *State v. Vestal*, 283 N.C. 249, 195 S.E. 2d 297 (1973); *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956); *State v. Quick*, 150 N.C. 820, 64 S.E. 168 (1909); *State v. Alston*, 113 N.C. 666, 18 S.E. 692 (1893). However, in

*State v. Ray*, 299 N.C. 151, 261 S.E. 2d 789 (1980), a new dimension was added to this rule by applying the harmless error test to the facts and circumstances peculiar to each case.

The harmless error test, other than in constitutional matters, requires a finding of prejudice to a defendant when there is a reasonable possibility that had the error not been committed a different result would have been reached at the trial. *State v. Ray, supra*; G.S. 15A-1443.

In *Ray* the defendant was charged with first-degree murder and at the close of the evidence, the court submitted to the jury alternative verdicts of second-degree murder, manslaughter, involuntary manslaughter, not guilty and not guilty by reason of self-defense and defense of another. All the evidence disclosed that the defendant intentionally shot the victim and the only defense was self-defense and defense of another. Defendant was convicted of involuntary manslaughter, and his appeal presented the sole question of whether the court committed prejudicial error in submitting the alternative possible verdict of involuntary manslaughter.

In writing the majority opinion, Justice Exum (Justice Copeland dissenting, and Chief Justice Branch joining in the dissent) reasoned that the trial judge erred in distinguishing involuntary manslaughter from manslaughter and second-degree murder by focusing on intent to kill rather than the presence of an intentional act, thereby "short-circuiting" the jury's consideration of defendant's claims of self-defense and defense of another. The majority further reasoned that, if the jury had been required to squarely face the real issue of self-defense or the right to defend another, there was a reasonable possibility that a verdict of not guilty might have resulted. In reversing the Court of Appeals' finding of no prejudicial error, Justice Exum, *inter alia*, wrote:

> We emphasize that the result reached here should not be read as casting any doubt on the validity of earlier decisions of this Court or of the Court of Appeals. Our decision today does no more than recognize that a verdict based upon the erroneous submission of a lesser included offense not supported by the evidence does not invariably constitute error favorable to a defendant as a matter of law. Whether such an error is harmless depends instead upon the facts and circumstances peculiar to each case.

We hold simply that the facts and circumstances peculiar to the instant case warrant a conclusion that, absent the erroneous sumission on involuntary manslaughter, there is a reasonable possibility that the jury would have returned a verdict of acquittal. The error complained of was therefore prejudicial to the defendant. G.S. 15A-1442 . . . .

\* \* \*

The principle applied in our cases so far, then, is nothing more than an application of the well recognized doctrine of harmless error, now codified in G.S. 15A-1442 and G.S. 15A-1443. Stated simply, that doctrine provides that only those errors which prejudice a defendant will entitle him to relief on appeal. G.S. 15A-1442. And a defendant is "prejudiced" by errors other than constitutional ones only when "there is a reasonable possibility that, had the error in question not been committed, a different result [favorable to defendant] would have been reached at the trial . . . ." G.S. 15A-1443. Thus, where there is no reasonable possibility that a verdict more favorable to defendant would have occurred absent an erroneous instruction on a lesser offense not supported by the evidence, the error occasioned by such instruction is harmless. Conversely, where there does exist a reasonable possibility that defendant would have been acquitted had not the lesser offense been erroneously submitted, the error is prejudicial and defendant is entitled to appellate relief.

*Id.* at 167 and 163-64, 261 S.E. 2d at 799 and 797.

The instant case is not governed by *Ray.* The case *sub judice* is controlled by the rule set out in the original line of cases represented by *State v. Vestal, supra.* We are of the opinion that the language in *State v. Quick, supra,* accurately sets forth the rule and its rationale.

In *Quick* the defendant was charged with second-degree murder and convicted of voluntary manslaughter. On appeal he contended that there was no evidence to support the charge of the lesser-included offense. Although the Court found there was evidence to support the lesser charge, the Court in a dictum statement wrote:

Suppose the court erroneously submitted to the jury a

view of the case not supported by evidence, whereby the jury were permitted, if they saw fit, to convict of manslaughter instead of murder, what right has the defendant to complain? It is an error prejudicial to the State, and not to him. His plea of self-defense had been fully and fairly presented to the jury and rejected by them as untrue. What, then, was the duty of the jury, if there was no evidence of manslaughter? Clearly, under the law, they should have convicted the defendant of murder in the second degree.

*Id.* at 823-24, 64 S.E. at 170.

In instant case, defendant's sole defense was that he did not commit the act upon which the greater and lesser offenses were based. There is no contention that there was anything in the charge to the jury which clouded that defense. Thus, the jury's verdict finding him guilty of second-degree rape implicitly, but clearly, rejected his defense that he did not commit the act upon which the charges were based. When the jury discarded defendant's sole defense, all the evidence pointed to the greater crime of first-degree rape. Therefore, the submission of the lesser-included offense was not prejudicial to defendant but to the contrary was in his favor.

[5]   Defendant next assigns as error the failure of the trial judge to grant his motion for judgment as of nonsuit. He contends that the State's evidence was so inconsistent that it could not support a verdict of guilty.

In support of his position, defendant relies upon the case of *State v. Williams*, 185 N.C. 685, 116 S.E. 736 (1923), which stands for the proposition that a case of this nature should be subjected to close examination and scrutiny by the jury.

A motion for judgment of nonsuit is correctly denied if there is competent evidence to support the allegations contained in the bill of indictment. Evidence tending to support these allegations must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from such evidence. *State v. Bell*, 285 N.C. 746, 208 S.E. 506 (1974). Further, this Court has consistently applied the rule that contradictions and discrepancies are for the jury to resolve and the presence of such contradictions and discrepancies does not warrant nonsuit. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). Here the prosecuting

State v. Summitt

witness testified that defendant had intercourse with her on or about Friday before Easter. She testified that she was born on 18 November 1966 and therefore was under the age of twelve years old at that time. She also testified that she had never had sexual intercourse with anyone prior to the incident on or about the Friday before Easter in the year 1978. The fact that defendant was over sixteen years of age was not contested.

Applying the above-stated rules of law, we hold that there was plenary evidence to carry the case to the jury.

Defendant contends that the trial judge erred by permitting the witness, Linda Harris, to testify concerning a conversation she had with the prosecuting witness in the fall of 1978. Defendant takes the position that the witness's testimony had the effect of altering the date fixed in the bill of indictment. Our careful examination of this record discloses that the witness, Linda Harris, made no statement as to the date of the alleged incident.

[6] Finally, defendant contends that he was denied a fair trial because of the court's instructions as to the date of the offense. He contends that, because the judge expressly instructed the jury as to the date of the July charge and did not so instruct on the 24 March charge, that the jury was left with the impression that the date of that crime was of no concern. The record reveals an exchange between defense counsel and the prosecutor concerning the July charge which necessitated the instruction there given. A contextual reading of the record makes it clear that the jury's consideration of the crime of which defendant stands convicted was restricted to his actions on or about 24 March 1978. The record reveals nothing indicating that defendant was surprised or hampered by any attempt of the State to alter the date charged in the bill of indictment. Defendant clearly had full opportunity to meet the State's evidence and did squarely meet the State's evidence concerning his actions on or about 24 March 1978. The jury chose to believe the evidence offered by the State.

We are constrained to note that because of the discrepancies and contradictions in the evidence and the long delay before the prosecuting witness made an accusation, a very close question was presented to the jury as to defendant's guilt or innocence. Nevertheless, our careful review of this record discloses no error warranting a new trial. Any relief for defendant must, therefore, come from the Executive Branch.

The decision of the Court of Appeals is

Affirmed.

Justice BROCK did not participate in the consideration or decision of this case.

Justice EXUM dissenting.

The majority, disturbed about the result in this case, suggests that defendant might get relief from the Executive Branch. Because of a serious legal error in the trial, prejudicial to defendant, but not really dealt with in the majority opinion, I see no need to defer the matter to the Governor. This Court should recognize the error and order a new trial on the basis of it.

Defendant was charged in two indictments with two different rapes of his niece, Sherry Knight. The first indictment alleged that a rape occurred on 24 March 1978. The second indictment alleged that a second rape occurred on 28 July 1978.

Easter in 1978 fell on March 26. The prosecuting witness, Sherry Knight, testified unequivocally that the March incident took place "the Friday before Easter last year." Thus she testified in accord with the indictment that the date of the March incident was March 24. She also tied the incident to the time that defendant, to whom she referred as "Uncle Mark," picked her up to go get her Easter dress. She said that on this occasion he took her back to his home where, being alone, they engaged in sexual intercourse. About "five or ten minutes later" defendant's wife, to whom Sherry referred as "Aunt Linda," came in and the three of them "went and got my Easter dress." Sherry was less clear as to the date of the July incident. She testified, in essence, that it happened sometime during the summer of 1978. During cross-examination when defendant was trying to elicit from Sherry the date of the July incident the district attorney stated before the jury that, in fact, he had picked out the date of 28 July and inserted it in the indictment. The witness, herself, according to the district attorney, did not arrive at that date. Sherry did not report these incidents until March 1979. She admitted that she "used to have a problem about lying, but it was before anything like this ever happened. I don't know who I lied to, or what I lied about. I remember I used to lie . . . ."

Defendant testified in his own behalf and offered corroborating witnesses. He denied being with the prosecuting witness on the

dates alleged in the indictments. With regard to the dates of July 26, 27 and 28 defendant's testimony tended to show that he, a gospel singer, was out of the state engaged in recording sessions in South Carolina. With regard to the March incident defendant's evidence tended to show as follows: On Tuesday, March 14, defendant and his wife picked up Sherry at her home and took her to Sears where they bought her an Easter dress as they had done the year before. After the purchase they returned Sherry to her home. On Friday, March 17, defendant and his wife again picked up Sherry at her home and took her back to defendant's home where she spent the weekend. Sherry slept in another bedroom with a friend of the Summitts on Friday and Saturday nights. Defendant was never alone with Sherry in his home during this weekend.

On this state of the evidence the trial judge instructed the jury regarding the July incident that the state "must be held to July 27, July 28, or July 29, 1978 . . . ." He gave no such limiting instructions with regard to the March incident, saying only that the jury would have to find that the March rape occurred "on or about March 24." Defendant was acquitted in the July case but convicted in the March case.

The Court of Appeals found no error in this instruction on the ground that defendant had offered an alibi defense for July 28 but not for March 24. The trial judge, reasoned the Court of Appeals, was not required to limit the jury's consideration to the date of March 24.

It is true that defendant did not attempt to establish where he was on March 24. He testified, in effect, that he was not with the prosecuting witness on that date and had never been with her at any time alone. Nevertheless because defendant admitted being with the prosecuting witness on several dates in March close to March 24, this date to me looms as crucial in the case based upon the March incident as does the date of July 28 in the case based upon that incident.

The prosecuting witness testified unequivocally that the rape occurred on March 24. She also tied the incident to the time defendant picked her up for the purpose of going to get her Easter dress. Defendant admitted being with the prosecuting witness when he bought her Easter dress but said that this was on Tuesday, March 14. He also admitted being with the prosecuting witness on March 17 through 21, the weekend she spent in defendant's home. At all

these times, according to defendant's testimony, someone other than the prosecuting witness and defendant was always present. Defendant and the prosecuting witness were never alone. Under the judge's instructions, however, the jury was permitted to consider whether the rape was committed on dates other than March 24. Left to roam in the month of March for possible dates upon which the rape might have occurred, the jury might well have seized upon the dates on which defendant admitted being with the prosecuting witness. This is particularly likely since the prosecuting witness tied the rape incident to the date when defendant bought her her new dress. By permitting the jury to consider these dates after defendant's evidence was in, the trial judge undermined defendant's legitimate reliance on the date alleged in the bill of indictment and testified to by the prosecuting witness, and thus ensnared defendant in his own defense. In other words, had the state's evidence indicated uncertainty as to the exact date, defendant would have been on notice that the state was not relying on March 24 but that it was relying on some date at or about that time. Defendant might well have chosen not to testify at all, because to do so truthfully he would have to admit that he was with the victim although he did not rape her at or about the time the state contended the rape occurred. When the indictment alleged and the state's evidence proved the date of the offense to have been March 24, defendant, in reliance thereon, chose to testify as he did: that he never raped her and was with her only on days other than the one alleged by the state and testified to by the alleged victim. By then permitting the jury to consider these other days, the trial court permitted, in effect, the jury to convict the defendant upon a theory which was not alleged in the bill of indictment and not supported by the state's evidence, but which was supported in part at least by defendant's own testimony.

Thus, in this case defendant, in considering what defense, if any, he could offer, was entitled to rely on the March 24 date. His testimony as to several March meetings with the prosecuting witness would not have been damaging to his defense but for the later instruction of the trial judge. Given that the defendant based his defense not only upon the fact that he did not rape the prosecuting witness, but also upon the fact that he was not even with her on the date alleged, the trial judge should have required the jury to find that defendant committed the act alleged, if at all, on March 24. Had he done so the jury would have been free to utilize all the

defendant's testimony against him; but the jury would then have had to decide whether defendant committed the act *on the date alleged.* By in effect allowing the jury to select other dates as the date of the crime, the trial court allowed defendant's evidence, evidence which would have been helpful given a proper instruction, to be utilized to convict him.

It may be argued that the state offered some evidence that the rape occurred earlier than March 24 in the form of Sherry Knight's testimony that it happened on the day defendant took her to buy her Easter dress. All the state's evidence, however, is that this day was March 24, the Friday before Easter. It is only the *defendant's testimony combined with that of Sherry Knight* which could support a date for the rape other than March 24. The argument only serves to heighten the fact that the court's instructions regarding the March incident served to entrap defendant with his own defense.

I do not mean to suggest that a defendant is denied a fair trial whenever his own testimony so implicates him in the offense that it likely leads to his conviction. Every defendant takes that risk when he chooses to testify in his own behalf. My point is that a defendant should be able to decide whether to testify at all and what defense, if any, he should offer *in reliance* on what the state has alleged and tried to prove with regard to the date, time and nature of the offense. When a defendant does so rely and offers his defense accordingly, the trial judge ought not then instruct the jury so as to permit a conviction which is both at variance with the state's case and supported only by defendant's own defense. To do so, in my view, denies defendant the rudiments of due process.

I think this principle is supported by *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961), a case also involving the sexual abuse of minors. Defendants there, just as defendant here, relied on the time fixed in the bill of indictment in preparing for trial. At trial they relied on the state's evidence in putting up their own defense. It is true that in *Whittemore*, the defense was alibi. Here, strictly speaking, the defense was not alibi with regard to the March incident. Nevertheless defendant's reliance on the date of March 24 as being the date of the alleged crime was equally as strong as the defendants' similar reliance in *Whittemore*. Defendants in *Whittemore* were given a new trial because the state in rebuttal offered evidence of offenses committed on other dates and the trial court instructed the jury that they could consider dates other than that charged in the bill of indictment. The Court said,

255 N.C. at 592, 122 S.E. 2d at 403:

> "True the time named in a bill of indictment is not usually an essential ingredient of the crime charged, and the State may prove that it was in fact committed on some other date. G.S. 15-155; *S. v. Bryant*, 228 N.C. 641, 46 S.E. 2d 847; *S. v. Baxley*, 223 N.C. 210, 25 S.E. 2d 621; *S. v. Trippe*, 222 N.C. 600, 24 S.E. 2d 340. *But this salutary rule*, preventing a defendant who does not rely on time as a defense from using a discrepancy between the time named in the bill and the time shown by the evidence for the State, *cannot be used to ensnare a defendant and thereby deprive him of an opportunity to adequately present his defense. The State did not contend that there was confusion as to the time named in the bill of indictment.* It insisted the date named was in fact the true date; but when defendants' evidence, if believed, would establish their innocence, it then contended the jury could, nevertheless, convict for the subsequent asserted wrongful acts." (Emphasis supplied.)

Just as in *Whittemore* the state here does not contend that there was confusion as to the time named in the bill; indeed its evidence unequivocally supports the date alleged and no other. Also as in *Whittemore*, the state, through the trial judge's jury instructions, is permitted to rely on other dates after defendant's evidence has come in.

Had the trial judge not expressly limited the jury's consideration to three particular dates with regard to the July incident his charge regarding the March incident, standing alone, may have been free from error. His words, "on or about March 24" may then have been taken by the jury as meaning that date or the dates immediately preceding or following. Since in the July case he did limit the jury's consideration to the date charged in the indictment and the dates immediately preceding and following but did not so limit it with regard to the March incident, the jury undoubtedly felt that they could consider other dates in March.

This error in the instructions denied defendant a fair trial in keeping with the dictates of due process. *State v. Whittemore, supra.* I, therefore, vote for a new trial.

Justice COPELAND joins in this dissent.